**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**JULIANNA G. WHITEHEAD,**

    **Plaintiff,**

**v.**　　　　　　　　　　　　　　　　　　　　　　　　**Case No.  8:05-cv-34-T-TBM**

**JO ANNE B. BARNHART,
Commissioner of the United States
Social Security Administration,**

    **Defendant.**
_____/

**O R D E R**

The Plaintiff seeks judicial review of the denial of her claim for Social Security disability benefits and Supplemental Security Income payments.  For the reasons set out herein, the decision is affirmed.

I.

Plaintiff was thirty-four years of age at the time of her second administrative hearing. She stands 5', 6" tall and weighed between 250 and 260 pounds, up from a usual 200 pounds. Plaintiff has an eleventh grade education with a GED.  Her past relevant work was as a licensed practical nurse, a waitress, and manager.  Plaintiff applied for disability benefits and Supplemental Security Income payments in June 1998, alleging disability as of November 9, 1997**,** by reason of headaches; degenerative disc disease of the lumbar spine; and neck,

shoulder, back, and leg pain. The Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff then received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ") on April 19, 1999.  By his decision dated October 20, 1999, the ALJ awarded Plaintiff benefits with a later onset date of September 24, 1998.  See (R. 283-92).[1] The Appeals Council granted the Plaintiff's request for review, vacated the October 20, 1999, decision, and remanded the case to the ALJ for further review of the Plaintiff's residual functional capacity (hereinafter "RFC") and to determine if there was any subsequent change in her ability to perform work activities.  See (R. 304-06).

The Plaintiff then received a second hearing before the ALJ on March 3, 2003.  In essence, Plaintiff claimed that she could no longer work at any job after experiencing whiplash in a car accident on November 9, 1997.  After the accident, Plaintiff suffered extreme pain in her low back, neck, and shoulders, and daily headaches.  She described the pain as daily and constant.  Her headaches could last up to eight hours a day, and they cause a lack of concentration and nausea.  She testified to taking ibuprofen and Tylenol almost hourly to relieve her headaches.  They cause her headaches to subside but not go away entirely.  She rated the severity of her headaches at a seven to nine on a scale of one to ten with ten

---

[1]Plaintiff testified she was unable to work at any job since her accident in November 1997.  She described intense low back pain radiating into both legs, and neck pain with tingling and numbness in her arms and headaches.  She believed her condition had worsened since the accident, especially after she gave birth to her son.  She testified she could stand for only twelve minutes and sit for only fifteen minutes before pain would force her to change position.  While describing a number of daily activities, she maintained she spent 65-70% of her day in a recliner.  See (R. 46-67).

representing the highest level of pain. Plaintiff described her constant neck and shoulder pain as a burning pain at times with a dull ache that extends down to her arms. Plaintiff also rated this pain at a seven to nine. As for her low back, she testified that it was from L/1 down and goes into both legs but primarily down her right leg. She described this pain as constant, daily, and worse than the pain in her neck and shoulders. She rated this pain at an eight to ten. After the accident, Plaintiff received chiropractic treatments but ceased them because of insurance. Plaintiff testified that when she has a very bad headache, she must lie down. She indicated that the headaches are triggered by noise and bright sunlight.

Additionally, Plaintiff testified that she has a problem with her grip and cannot open things with a twisting motion or lift more than eight to ten pounds without experiencing pain. She is unable to bend. Plaintiff testified that she is unable to sleep through the night because of pain and numbness in her arms, legs, and right hip. She wakes up about every hour and a half to two hours, from four to eight times a night, and she stays awake from ten to thirty minutes per time.

As for her daily activities, Plaintiff has problems seeing to her personal care and has had to make lifestyle modifications. She testified that her children assist with her dressing and picking things up for her, and her husband helps to bathe her. Additionally, she testified that her husband primarily does the laundry, cooking, grocery shopping, cleaning, other housework, and driving.[2] According to Plaintiff, she was physically unable to perform such

---

[2]Plaintiff admitted that, at one time, she had been less than forthright with her doctor and with Social Security and in fact had overstated her ability to do these type activities, mainly because she was embarrassed about her limitations.

activities because of the pain. Plaintiff spends six to eight hours each day in a reclining chair with her feet up to take the pressure off her back and hip. She takes a thirty-minute nap once a day. She estimated that she could stand, walk, or sit from about ten to fifteen minutes before pain sets in. She can lift eight to ten pounds. She cannot bend, stoop, kneel, crouch, or crawl without pain.

According to Plaintiff, her condition has worsened, as her disk condition is degenerative, and she does not believe that she could have done any type of work at all since her accident. See Plaintiff's testimony (R. 71-95).

Plaintiff's husband, Robert Whitehead, also testified in Plaintiff's behalf. Mr. Whitehead substantially corroborated his wife's pain complaints and limitations. Essentially, he testified that she is unable to do much since her accident and spends her days reclined for about three or four hours a day and sitting down. He indicated that Plaintiff's medications cause her to be moody, drowsy, sick to her stomach, and forgetful. He summarized by saying that Plaintiff has been in great pain since the accident and has not been the same. (R. 95-105)

The ALJ also took testimony from Joyce Cartright, a vocational expert (hereinafter "VE"). Assuming an individual of Plaintiff's age, education, and work experience limited to occasionally lifting, pushing, pulling, and bending to 30 pounds, the VE opined that such person could perform all of her past work except the LPN work. With a lifting limitation of twelve pounds occasionally, and no excessive walking, standing, or sitting, such person could not do any of Plaintiff's past work, but could work as a food and beverage order clerk, and in reception information as a telephone quotations clerk, both sedentary unskilled positions.

4

With an additional limitation for performing simple repetitive tasks, the VE opined that such person could still perform these jobs.

Upon the assumption that the person could occasionally lift and/or carry less than ten pounds; could frequently lift and/or carry less than ten pounds; could stand and/or walk for less than two hours in an eight-hour work day; could sit for less than four hours in an eight-hour work day; with a limited ability to push and pull with the lower extremities and never climb, balance, stoop, kneel, crouch, and crawl; avoid concentrated exposure to wetness, noise, fumes, odors, dust, gases, and poor ventilation; and avoid even moderate exposure to humidity and vibration; and limit all exposure to extreme cold and heat and hazards, the VE opined that such person could not perform any work.

Finally, if Plaintiff's complaints of pain and daily headaches were fully credited, as well as her feeling tired and sleepy; limitations in focus, memory, and ability to concentrate; and her need to recline for approximately six to eight hours a day, the VE opined that Plaintiff would not be able to perform any work.  Citing the RFC assessment by Dr. Cavallini, whereby the hypothetical individual could occasionally lift less than ten pounds; frequently lift more than ten pounds; stand or walk less than two hours in an eight-hour work day; sit less than six hours in an eight-hour work day; periodic sitting and standing to relieve pain and discomfort; limited in her upper extremities; limited in the lower extremities because of numbness and weakness; could occasionally balance and stoop; could never kneel, crouch, or crawl; limited in reaching, handling, fingering, and feeling; and avoid concentrated exposures of extreme cold, extreme heat, wetness, humidity, vibration, fumes, odors, dust, gases, and machinery, such person would be precluded from all work.  (R. 105-10).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed herein as necessary. Critical to the ALJ's decision was Plaintiff's date last insured for disability benefits, March 31, 1998.[3]

By his decision of August 5, 2003, the ALJ determined that while Plaintiff has severe impairments related to lumbar disc disease with radiculopathy, lumbago, chronic lumbar strain, thoracic and cervical strain, and headaches, she nonetheless had the residual functional capacity to perform a restricted range of light work from November 9, 1997, through September 23, 1998, and a restricted range of sedentary work from September 24, 1998. Upon these findings and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to her in the local and national economy on or before September 23, 1998. Given her date last insured for disability insurance benefits, Plaintiff was determined to be ineligible for such benefits. For the period on and after September 24, 1998, Plaintiff was determined to be disabled from all work and therefore entitled to a period of disability and Supplemental Security Income payments. (R. 20-32). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

---

[3] As a consequence of this date last insured, Plaintiff was obliged to establish that she was disabled on or before this date in order to prevail on her claim for disability insurance benefits. See Ware v. Schweiker, 651 F.2d 408, 411 (5th Cir. 1981).

II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. See id. at § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Commissioner must apply the correct law and demonstrate that she has done so.  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw

inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

### III.

The Plaintiff raises three claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The Administrative Law Judge erred in not according the Claimant's treating sources substantial weight;

(2) The Administrative Law Judge erred in finding that the claimant's allegations were not "fully persuasive" and in giving these allegations "little weight"; and

(3) The Administrative Law Judge erred in his questioning of the vocational expert.

By her first claim, Plaintiff alleges that the ALJ failed to accord substantial weight to a physical capacity assessment made in December 2002 by treating physician, Dr. Lionel

Cavallini, wherein the doctor found Plaintiff capable of performing less than a full range of sedentary work. See (R. 347-54).  According to the VE, with such limitations Plaintiff could perform no work.  Although the opinion was rendered in February 2003, well after Plaintiff's date last insured for benefits, the doctor indicated his view that this assessment related back to the time frame of November 13, 1997, a period before Plaintiff's date last insured. See (R. 363).  Although the opinion was acknowledged by the ALJ, he discounted it for the period prior to September 24, 1998, because of the doctor's statement in April 1998 that Plaintiff was stable; because the assessment was inconsistent with the treatment notes and assessment of Ann L. Marra, a chiropractor associated with Cavallini; and because it was inconsistent with the doctor's own records and the objective medical evidence.  (R. 26).

Plaintiff is correct that when considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary.  Broughton v. Heckler, 776 F.2d 960, 961 (11th Cir. 1985); see also 20 C.F.R. § 1527(d)(2).  Furthermore, the ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to do so is reversible error.  In this circuit, where the Commissioner has ignored or failed properly to refute the treating physician's testimony, such testimony, as a matter of law, must be accepted as true.  MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).  Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  Good cause for rejecting a treating source's opinion may be

found where such opinion is not supported by the evidence or where the evidence supports a contrary finding. Id.; Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987).

After close review, I conclude that the Plaintiff is not entitled to relief on this claim. A review of the medical reports supports the Commissioner's argument that the ALJ was not required to find Plaintiff disabled from all work on or before the September 1998 date. A review of Dr. Cavallini's reports supports that he imposed no substantial restrictions on Plaintiff prior to October 1998. His treatment notes between November 1997 and April 1998 reflect conservative physical therapy and a referral for chiropractic care. Upon discharge in April 1998, the doctor noted Plaintiff was stable, and he assessed Plaintiff with a 10% impairment rating. Ann Marra, a chiropractor associated with Dr. Cavallini, treated Plaintiff conservatively during this same period. In her April 1998 assessment, she restricted Plaintiff's lifting, pushing, pulling, and bending to thirty pounds with no other limitations. (R. 188). On September 24, 1998, subsequent to the birth of a child, Plaintiff again saw Dr. Cavallini, who noted a recurrence in symptoms and disability of her lumbar spine. (R. 220). In October 1998, the doctor signed a disability statement limiting Plaintiff to lifting no more than twelve pounds and no excessive walking, standing, or sitting. (R. 219). Objective evidence from shortly after the accident revealed that Plaintiff's lumbar vertebrae demonstrated normal body height, alignment, and marrow signal. Paraspinal soft tissues were unremarkable. There were degenerative changes noted in the lumbar spine and diffuse bulging at L5-S1, L4-5, and L3-4. (R. 180-81). A later MRI revealed little change in the lumbar spine and no evidence of herniation. (R. 251-52). An MRI of the cervical spine was

unremarkable apart from a straightening of the lordotic curvature likely related to spasm. (R. 250).

As set forth above, an ALJ may discount the reports or opinions of treating doctors on a showing of good cause. Here, the reasons stated by the ALJ for not crediting fully this treating doctor's opinion insofar as he related his assessment to the period prior to Plaintiff's date last insured are supported by the substantial evidence. Plaintiff is not entitled to relief on this claim.

While there is a lack of specifics in the claim, Plaintiff next complains generally that her subjective complaints regarding pain were supported by the medical record and should have been fully credited by the ALJ. She maintains that the ALJ failed to evaluate her subjective complaints in accordance with the Eleventh Circuit "pain standard." She also urges generally that the ALJ failed to evaluate and make appropriate findings as to the effect of her combination of impairments and failed to address the effects of her medications.

Insofar as the Plaintiff complains that the ALJ failed to follow this circuit's "pain standard," the decision reflects otherwise.[4] While not expressly acknowledging the "pain

---

[4]In this circuit, subjective complaints such as pain, fatigue or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. By this standard, there must be evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986)). A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. Id.; Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987). If the ALJ determines not to credit subjective testimony, he must articulate explicit and adequate reasons for his decision. The failure of the ALJ to articulate the reasons for discrediting subjective testimony

standard," the ALJ did recognized his responsibility to review Plaintiff's symptoms in accordance with the provisions of 20 C.F.R. §§ 404.1529, 416.929. (R. 26). The proper application of these regulatory provisions is adequate to satisfy this circuit's standard. As reflected in the decision, while the ALJ credited the Plaintiff with severe conditions that could (and did) give rise to some degree of pain, he discounted the full extent of the complaints on the basis of the medical evidence prior to her date last insured. Id. Where the findings and discussion indicate that the standard was properly applied, the failure of the ALJ to expressly recognize the "pain standard" is no cause for a remand. See Wilson v. Barnhart, 284 F.3d 1219, 1226 (11th Cir. 2002). Further, Plaintiff fails to demonstrate the inadequacy of the several reasons stated by the ALJ for not fully crediting her subjective complaints. Id.

Similarly, to the extent that Plaintiff complains the ALJ failed to consider the combined effect of her impairments, the decision again reflects otherwise.[5] The decision reflects that the ALJ recognized his obligation to consider all of Plaintiffs impairments. (R. 21). A fair reading of the decision reflects that he reviewed the medical record in this light.

---

requires, as a matter of law, that the testimony be accepted as true. Id.; Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).

[5]The Act and pertinent case law require that the ALJ consider each impairment, as well as the combined effect of all a claimant's impairments. 42 U.S.C. § 423(d)(2)(B); Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986). In Bowen v. Heckler, 748 F.2d 629 (11th Cir. 1984), the court held that where a claimant has alleged a multitude of impairments, a claim for benefits may lie even though none of the impairments, when considered individually, is disabling. In such instances, the ALJ must make specific and well-articulated findings as to the effect of the combination of impairments and whether the combined impairments cause the claimant to be disabled. Id. at 635; Walker v. Bowen, 826 F.2d 996, 1001 (11th Cir. 1987).

(R. 22-28). Finally, his findings reflect such consideration as well. (R. 30). A finding reflecting consideration of the combination of impairments is sufficient to indicate that the ALJ has complied with the applicable standard. See Jones v. Dep't of HHS, 941 F.2d 1529, 1533 (11th Cir. 1991). Finally, as the Commissioner notes, Plaintiff wholly fails to identify any particular impairment that was not considered by the ALJ. Mere reliance on boilerplate language taken from case law is not enough in this instance. Plaintiff is not entitled to relief on this basis.

Finally, the Plaintiff's blanket assertion that the ALJ disregarded the side effects of her medications is also contradicted by the decision. See (R. 27-28).

In the third claim, the Plaintiff complains vaguely that the ALJ's hypothetical question failed to consider all her limitations. Once again, Plaintiff cites to the applicable standard but fails to specify her claim of error. Indeed, she fails to identify any particular limitation(s) that the ALJ failed to include within the hypothetical questions, and thus, the court is left to guess the basis of the claim. Nonetheless, the court has considered the hypothetical questions propounded by the ALJ, as set out in some detail above, and concludes that Plaintiff is not entitled to relief on this claim.[6] Here, the ALJ fashioned a number of hypothetical questions based on different limitations suggested in the records. Ultimately, he accepted the RFC assessment given by the Plaintiff's treating physician for the period after September 23, 1998. By this RFC, Plaintiff was determined to be eligible for SSI benefits.

---

[6]As the transcript reflects, counsel represented Plaintiff at the hearing, and he was afforded a full opportunity to question the VE himself. If the various hypothetical questions fashioned by the ALJ were somehow inadequate, counsel need only blame himself for not correcting the error.

Surely, Plaintiff has no complaint with that. While the ALJ determined a different RFC for the period prior to September 24, 1998, for the reasons set forth above, the medical record supported the difference, and as a result, the limitations necessary for an adequate hypothetical were different. Plaintiff is not entitled to relief on this claim.

## IV.

As the decision clearly reflects, Plaintiff's date last insured was critical to the ALJ's determination that she was not entitled to disability insurance benefits. I find the medical record permits a conclusion that Plaintiff was not disabled from all employment prior to that date. After careful review of the evidence and in light of Plaintiff's date last insured, I conclude that the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards, and to the extent that it denies disability insurance benefits, it is supported by substantial evidence. The decision is affirmed. Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the file.

**Done and Ordered** at Tampa, Florida, this 28th day of February 2006.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record